## SHARPE *v.* DOYLE.

1. Where the marshal of the United States, to whom was directed a warrant of provisional seizure sued out of the proper court sitting in bankruptcy, levied it upon certain goods in the possession of a third party claiming title to them,— *Held*, that this court has jurisdiction to re-examine the judgment of a State court, whereby it was held in a suit against the marshal that, by reason of such possession, he had no authority under the laws of the United States to so levy the warrant.

2. The goods were subject to seizure under the warrant, if they were the property of the person against whom the proceeding in bankruptcy was pending.

3. The marshal must, in such a case, act at his own risk, in regard to the ownership of them and their liability to seizure.

ERROR to the Superior Court of the city of New York. The case is stated in the opinion of the court.

*Mr. Charles E. Whitehead* for the plaintiff in error.

*Mr. William Henry Arnoux, contra.*

MR. JUSTICE MILLER delivered the opinion of the court.

Alfred E. Lagrave and James D. Otis, partners in trade, were, on a petition filed May 30, 1872, adjudicated bankrupts on the eighth day of the following June. On the first day of the latter month a warrant was issued under the seal of the District Court, in which the bankruptcy proceedings were pending, directed to the marshal of the district, which, after

reciting that a previous order had been obtained for the posses-
sion of the bankrupts' goods, proceeded as follows : —

"You are therefore required and authorized, immediately
upon receipt hereof, to take possession provisionally of all the
property and effects of said Alfred E. Lagrave and James D.
Otis, and safely keep the same until the further order of the
court."

Under this warrant the plaintiff in error, who was the mar-
shal to whom the writ was directed, seized eight packages of
goods. For this act he was sued in the Superior Court of the
city of New York by the defendants in error, who recovered a
judgment against him for their value, which was finally affirmed
by the Court of Appeals.

The case was tried by a jury, the defendant's plea being
that the goods were the property of the bankrupts, and
were lawfully seized under the warrant for provisional pos-
session.

While it is uncontradicted that the goods had been the
property of the bankrupts, evidence was given tending to show
that, in fraud of the bankrupt law, they had been purchased a
few days before by the plaintiffs in this action, and that, when
seized by the marshal, they were in the possession of the plain-
tiffs, or of some one for them. The court gave the jury the
following instruction : —

"As you know, the defendant is a United States marshal.
He has certain powers given to him by statute. Under a war-
rant of the kind in evidence (the form of which it is unneces-
sary to read to you) he has authority to take goods belonging
to a bankrupt and which are in his possession. He has no
authority under such a warrant to take goods from a third per-
son, having possession for himself of the goods and claiming as
a matter of right to be entitled to their possession. If that be
the case here, the defendant had no right to take these goods
from Mr. Ketchum's warehouse. If Mr. Doyle was, as a mat-
ter of fact, in possession of these goods, claiming them as
owner for himself, then the plaintiffs, Doyle and Adolphi, are
entitled to recover for the value of the goods what you shall
find it to be. Otherwise, the defendant is entitled to a verdict.
It will be unnecessary for you to inquire as to the reasons of

this; but I say to you, briefly, that such a rule of law as that does not finally determine the rights of the parties, because the defendant may only have limited rights to take possession under certain circumstances, while the assignee in bankruptcy for the creditors of Lagrave & Co. might try the question on different principles of law. This defendant is an officer of the law, with certain limited powers."

This charge, to which an exception was taken, was decisive of the case, there being no doubt that persons other than the bankrupts had, under claim of title, the possession of the goods at the time they were seized under the warrant. The defendant asserted a right to them, under the laws of the United States, on the ground that the pretended purchase by the plaintiffs was a fraud upon the bankrupt law, and passed no title; that the ownership was, by virtue of the bankruptcy proceedings, in the assignee; and that the plaintiffs were not entitled to recover. The right so claimed was decided adversely to the defendant. The instruction was affirmed in the court of last resort, and its soundness depends upon the authority conferred on him by the writ. The case is, therefore, a proper one for a writ of error from this court.

The writ in the marshal's hand is identical in its mandatory part with sect. 5024 of the Revised Statutes, and, if he did no more than it commanded him, was a sufficient justification for his act, unless the statute is unconstitutional. This is not pretended, either here or in the State courts.

It is a little difficult to see upon what principle the plaintiffs can maintain the suit, if they were not the rightful owners of the goods. It is true that, in a case of naked trespass without claim of right in the trespasser, the possessor of the goods may recover, without regard to the state of the title. But such is not the case here. The defendant acted under a lawful writ from a court having jurisdiction to issue it. By his plea he took upon himself the burden of proving that the goods were subject to seizure under the writ; and in doing so he must, of course, prove that the plaintiffs were not the lawful owners of them. In other words, that the right of the assignee in bankruptcy, whose right he represented in that suit, was superior to that of plaintiffs.

But the court said: " You shall not be permitted to prove that. If plaintiffs show that they were in possession, asserting ownership, you will not be allowed to contradict that assertion."

Such a proposition is opposed to all the analogies of the law.

If a writ be sued out of a court of competent jurisdiction, directing an officer to seize specifically described property, as in admiralty, replevin, or ejectment cases, it is a protection to the officer, when he is sued in trespass for executing it. If, however, it in general terms directs or authorizes him to seize the property of an individual, without a special description of it, he exercises the authority conferred at his own risk as regards the ownership of the property, and its liability to seizure under that process. Such is the rule applicable to an ordinary writ of attachment, and to a *fieri facias* at common law.

When, however, some one other than the defendant sues the officer for a wrongful levy of the writ, it has never been doubted that the title to the property and the rightfulness of the seizure under the writ were open to inquiry, and that unless the plaintiff made out his case before the jury, he must fail. This subject is fully considered by the court in *Buck* v. *Colbath*, 3 Wall. 334.

No just distinction can be seen between this latter class of cases and the one now under consideration. The act of Congress was designed to secure the possession of the property of the bankrupt, so that it might be administered under the proceedings in bankruptcy. Between the first steps initiating them and the appointment of the assignee, a considerable time often elapses, during which the effects of the bankrupt, especially in a case commenced by creditors, may be surreptitiously conveyed beyond the reach of the court or of the assignee, who, when appointed, is entitled to the possession of them. If the bankrupt does not voluntarily aid the court, or is inclined to defeat the proceedings, he can, with the aid of friends or irresponsible persons, sell his movable property and put the money in his pocket, or secrete his goods or remove them beyond the reach of the assignee or the process of the court, and thus defy the law. The evidence in this case shows the manner in which this can be done.

It was the purpose of the act of Congress to remedy this evil. It, therefore, provides that as soon as the petition in bankruptcy is filed, the court may issue to the marshal a provisional warrant, directing him to take possession of all the property and effects of the bankrupt, and hold them subject to the further order of the court. To have limited this right or duty of seizure to such property as he might find in the actual possession of the bankrupt would have manifestly defeated in many instances the purpose of the writ. There is, therefore, no such limitation expressed or implied. As in the writ of attachment, or the ordinary execution on a judgment for the recovery of money, the officer is authorized to seize the property of the defendant wherever found; so here it is made his duty to take into his possession the bankrupt's property wherever he may find it. It is made his duty to collect and hold possession until the assignee is appointed or the property is released by some order of court, and he would ill perform that duty if he should accept the statement of every man in whose custody he found property which he believed would belong to the assignee when appointed, as a sufficient reason for failing to take possession of it.

But he does this on his own responsibility for not only a faithful, but a correct, judgment in deciding what property to seize. He is liable to suit if by mistake he takes possession of property not liable to seizure under his warrant.

Such a suit was brought in this case; and we can see no reason why the issue made by the pleadings, namely, the true ownership of the property, should not have been fully submitted to the jury. It was the shortest way to determine the rights of the parties. It was the first time the issue was presented. It was before a court of competent jurisdiction.

To hold that the plaintiffs, by reason of their bare assertion of ownership connected with possession, must recover of the marshal the value of the property, and that the assignee could then have sued plaintiffs and recovered it from them, is a mode of doing justice that does not commend itself to our judgment, even if the assignee could be sure to find a responsible defendant when he came to sue.

We are of opinion that the Court of Appeals of New York

was in error in its construction of the bankrupt law and in affirming the instruction of the inferior court.

> *Judgment reversed, and cause remanded for further proceedings in conformity with this opinion.*