## BACHRACK *v.* NORTON.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF TEXAS.

No. 116. Argued and submitted November 15, 1889. — Decided December 9, 1889.

An action on a marshal's bond, to recover damages for the wrongful taking of goods under an attachment issued out of a Circuit Court of the United States, is a case arising under the laws of the United States, and is within the jurisdiction of a Circuit Court of the United States without averment of citizenship of the parties. *Feibelman* v. *Packard,* 109 U. S. 421, affirmed and applied.

In the absence of a statute forbidding it, an assignment for the benefit of creditors may be made to an assignee who is not a citizen or resident of the State where the assignment is made or the debtor resides.

It having been held in *Cunningham* v. *Norton,* 125 U. S. 77, that the act of Texas of March 24, 1879, was intended to favor general assignments by insolvents for the benefit of their creditors, and to sustain them notwithstanding technical defects; it is now *Held,* that there is nothing in the sixth section of the act, directing the assignee's bond to be filed with the county clerk of "*his*" county, to indicate a legislative intent that an assignee under such an assignment must necessarily be a citizen or resident of the State.

*Mr. H. G. Robertson* and *Mr. Sawnie Robertson,* for plaintiff in error, submitted on their brief.

*Mr. D. A. McKnight* for defendant in error. *Mr. John Johns* was with him on the brief.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This is an action on a marshal's bond, against him and his sureties, to recover damages for his wrongful taking of the goods of the plaintiff under an attachment issued out of the Circuit Court of the United States for the Northern District of Texas, against one Myerson. According to the decision in *Feibelman* v. *Packard*, 109 U. S. 421, it is a case arising under the laws of the United States, and is therefore within the jurisdiction of the Circuit Court without any averment of citizenship of the parties.

The plaintiff avers that Myerson had previously assigned the goods to him for the benefit of his creditors, and sets out a copy of the assignment. The defendants demurred to the petition, or, in the language of the Texas practice, filed a special exception, the principal ground of which was that it appears by the petition that the plaintiff was a resident and citizen of Missouri, and therefore could not lawfully be an assignee under the laws of Texas. The court below entertained this view and sustained the exception and, the plaintiff having declined to amend, the cause was dismissed. The question, therefore, is, whether the view taken by the court below was, or was not, erroneous.

The assignment was made on the 22d day of October, 1880, under the act of the legislature of Texas, approved March 24th, 1879, which was before this court in the case of *Cunningham* v. *Norton*, 125 U. S. 77. In that case the provisions of the act were examined *in extenso*, and we held that it was intended to favor general assignments by insolvents for the benefit of their creditors, and to sustain them, notwithstanding technical defects, provided they assigned all the property of the debtor. The assignment in the present case is substantially the same in form as in the case of *Cunningham* v. *Norton*. The only material difference (if it is material) is the fact that the assignee was a resident of the State of Missouri, and not of Texas. As to this, the allegation of the petition is, " that at the time of making of said assignment he (the plaintiff) was a resident of the city of St. Louis and State of Missouri; but that, while

holding his domicil in said State last named, his business lay in
the State of Texas, and for the greater part of the year, before
and since said time of the making of said assignment, he was in
said State of Texas in pursuance of his calling in said State;
that at, before and since the time of said assignment he was,
in pursuance of his calling, frequently in said county of Gray-
son, in which county he had business interests. That at the
time of making said assignment said Myerson was a resident
of Grayson County, Texas, where he was conducting his bus-
iness, and where said goods, wares and property, before and at
the time of making said assignment, were situated, and where
said assignment was made." Some two or three years after
this assignment was made, viz., April 7th, 1883, an amending
act was passed which, amongst other things, required that the
assignee of an insolvent debtor under the act should be a res-
ident of Texas; but the act of 1879 had no such requirement.
The only word in the whole act which could be construed to
imply it was in the 6th section, which required the assignee to
execute a bond with sureties, and directed that the bond should
be filed with the county clerk of *his* county. We think that
this expression was insufficient to raise the implication con-
tended for. It probably only meant that the bond should be
filed with the clerk of the county where the debtor resided and
carried on business.

Independently of a statute on the subject, we do not see
why, as a mere matter of law, an assignment should be held
void because the assignee is not a citizen or resident of the
State where the assignment is made and the debtor resides,
provided he complies with the conditions prescribed by the law.
A citizen, or resident, of another State may, in a particular
case, be a very proper assignee. A large part of a debtor's
assets may be located in a State other than that in which he
resides. If a non-resident assignee should for any reason be
deemed an improper person to act as such, the court having
jurisdiction of the matter could, according to the laws of Texas,
remove him and appoint another in his place. It was the ob-
ject of the act of 1879 to uphold, rather than to set aside, as-
signments; to aid defects, rather than to allow them to defeat

the purpose of the debtor and the rights of his creditors. In *Windham* v. *Patty*, 62 Texas, 490, the court held that the failure of the assignee to give a bond ought not to defeat the assignment, but that the creditors might apply for the appointment of another assignee to fulfil the trust. The 14th section of the act of 1879 declares that "if any assignee becomes unsuitable to perform the trust, refuses or neglects so to do, or mismanages the property, the county judge, or judge of the District Court, may, upon the application of the assignor, or one or more of the creditors, upon reasonable notice to all parties interested, by publication or otherwise, as such judge may direct, remove such assignee, and, in case of vacancy by death or otherwise, shall appoint another in his place, who shall have the same powers and be subject to the same liabilities as the original assignee."

One or two other objections to the assignment are made under the special exception, but we do not deem it necessary to discuss them. They are clearly untenable. In our judgment it was error in the court below to allow the exception and dismiss the action. The judgment must be

*Reversed; and the cause remanded, with instructions to overrule the exceptions, and take such further proceedings in the case as to law and justice may appertain.*